**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| AMINTA C.,[1] | : | Case No. 3:20-CV-226 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ENTRY**

---

Plaintiff Aminta C. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #9).

## I.    Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income benefits on April 6, 2017, alleging disability due to several impairments, including arthritis, back problems, knee problems, and hand problems. (Doc. #9-6, *PageID* #304). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 1, 2017, the alleged onset date. |
| Step 2: | Plaintiff has the following severe impairments: degenerative joint disease of the hand and shoulders, degenerative disc disease of the lumbar spine, anxiety, depression/bipolar disorder, posttraumatic stress disorder (PTSD), and polysubstance abuse. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work… subject to the following limitations: (1) permitted to alternate between sitting and standing every 30 minutes while at the workstation; (2) frequently handling, fingering, and feeling with the right upper extremity; (3) occasionally climbing ladders, ropes, or scaffolds; (4) frequently climbing ramps and stairs, kneeling, and crawling; (5) performing simple, routine tasks but not at a production rate pace and without strict performance quotas; (6) occasional interaction with |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

supervisors, coworkers, and the general public; and, (7) can tolerate occasional changes to a routine work setting, defined as 1-2 per week."

Plaintiff is unable to perform her past relevant work.

Step 5:     Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #9-2, *PageID* #s 38-53). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability. *Id.* at 53.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #9-2, *PageID* #s 38-53), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's Memorandum in Opposition (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision

of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.    Discussion**

In her Statement of Errors, Plaintiff alleges that the ALJ erred in his evaluation of the treating nurse practitioner, Katina Thomas's, opinion and Plaintiff's mental health symptoms. (Doc. #10 at *PageID* #s 1310-13).   In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. #12, *PageID* #s 1322-31).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527.  Because Plaintiff's claim for disability was filed in April 2017, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.   20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …."   §

4

404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc.*

*Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in his assessment of Plaintiff's treating certified nurse practitioner, Katina Thomas. (Doc. #10, *PageID* #s 1310-13).  In addition to the progress notes submitted from her treatment of Plaintiff, Ms. Thomas completed a "Mental Impairment Questionnaire" in February 2019.  (Doc. #9-9, *PageID* #s 857-60).  On the questionnaire, Ms. Thomas indicated that she had been treating Plaintiff for bipolar disorder, alcohol abuse, nicotine dependence, PTSD, and other stimulant dependence since 2018. *Id*. at 857. In response to a list of potential signs and symptoms, Ms. Thomas indicated that Plaintiff exhibited symptoms, including mood disturbance; anhedonia or pervasive loss of interests; generalized persistent anxiety; difficulty thinking or concentrating; and hostility/irritability.  *Id*.  She confirmed that Plaintiff's psychiatric condition does not exacerbate her experience of pain or other physical symptoms.  *Id*. According to Ms. Thomas, Plaintiff's condition would cause her to be off-task 20 percent or more of the time and be absent more than three times a month.  *Id*.

Ms. Thomas also completed a checklist form regarding Plaintiff's ability to perform work-related activities in light of her mental health impairments. *See id*. at 858.  As for activities that fell under the categories of being able to "understand, remember, or apply" and "concentrate, persist, or maintain, pace," Ms. Thomas indicated that Plaintiff was moderately limited in these types of activities. *Id*.  As for activities that fell under the category of being able to "adapt or manage oneself," Ms. Thomas found that Plaintiff primarily had moderate limitations, but was only mildly limited in certain activities, such as her ability to maintain personal hygiene and attire

6

appropriate to the work setting and being aware of normal hazards and taking appropriate precautions. *Id*.

Overall, Ms. Thomas found Plaintiff "moderate[ly]" limited in her ability to learn, recall, or use information to perform work activities as well in her ability to focus attention on work activities and to stay on task at a sustained rate. *Id*. at 859. In contrast, she indicated that Plaintiff had "marked" limitations in her overall ability to relate to and work with supervisors, co-workers, and the public and in her ability to regulate her emotions, control her behavior, and maintain well-being in a work-setting. *Id*. When asked whether Plaintiff would be able to perform regular, full-time competitive work on a sustained basis without being absent more than two times per month, being off-task more than 15 percent of the day, or needing additional breaks because of her impairments, Ms. Thomas checked the "No" box. *Id*. Finally, when asked whether Plaintiff would still have an underlying severe psychiatric condition impairing her ability to engage in normal work activity even if she stopped abusing drugs or alcohol, Ms. Thomas checked the "Yes" box but did not provide an explanation where requested. *Id*.

In reviewing Ms. Thomas's assessment of the Plaintiff, the ALJ ultimately found it "minimally persuasive." (Doc. #9-2, *PageID* #42). In support, he pointed out that Ms. Thomas's opinion was internally inconsistent as she found Plaintiff to be unable to work and yet only moderately limited in most of her mental limitations. *Id*. at 43. Additionally, for the areas of mental functioning in which Ms. Thomas opined Plaintiff had marked limitations, that is, in social functioning and overall ability to regulate emotions/control her behavior, the ALJ found these to be inconsistent with other objective evidence. *Id*. Here, he pointed to treatment records indicating that Plaintiff decompensates when she fails to comply with taking her medication but otherwise

has diminished symptoms and is capable of conduct in conformance with socially acceptable standards when keeping up with her treatment. *Id*.

The ALJ's explanation for finding Ms. Thomas's opinion only minimally persuasive is clearly articulated and supported by substantial evidence.  In weighing Ms. Thomas's opinion, the ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c— supportability and consistency.  He pointed out that discrepancies between Ms. Thomas's finding that Plaintiff is unable to work with her findings that Plaintiff is mostly only moderately limited in her mental functioning abilities. Similarly, the ALJ pointed out that inconsistencies between the more severe limitations provided by Ms. Thomas and other findings in the record, including Plaintiff's ability to conform her conduct to socially acceptable standards when she complies with her medication regimen.

Plaintiff, in turn, disputes this finding, alleging that Plaintiff's failure to comply with her medication is itself a symptom of her mental impairments. (Doc. #10, *PageID* #s 1310-12). Yet, in making this assertion, Plaintiff fails to point to any medical opinion substantiating her claim. Instead, she generically refers to treatment records documenting her poor judgment, "risky behavior and inability to maintain well-being." *Id*. at 1310.  However, as pointed out by the Commissioner, the treatment records relied upon by Plaintiff only reveal that her poor judgment often results in aggression and violence. (*See* Doc. #9-10, *PageID* #s 1036-39).  In fact, there is no evidence indicating that her limitations in these areas is what is causing her to be noncompliant with her medication.

Moreover, in making this claim, Plaintiff fails to explain why she appears to remain compliant with her prescribed pain medication and other treatments.  Notably, a review of the

record indicates that Plaintiff was compliant with medication for her hypertension and other physical impairments. (Doc. #9-7, *PageID* #398; Doc. #9-9, *PageID* #s 864-65, 917, 923, 928, 932, 945, 949; Doc. #9-10, *PageID* #1234). Indeed, it stands to reason that if her poor judgment and inability to maintain well-being are responsible for her noncompliance with her mental health medication, they should also result in noncompliance with her other medications and treatments. Thus, contrary to Plaintiff's contentions, the ALJ was not required to consider the reasons for her noncompliance as Plaintiff has not pointed to any substantiated reason for her noncompliance.

In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor in his review of Ms. Thomas's opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how she considered the supportability and consistency factors).

Further, there is substantial evidence to support the ALJ's decision regarding Plaintiff's mental limitations. For example, the ALJ considered other opinion evidence in finding that Plaintiff only had moderate mental limitations, including the opinions of the state agency consultants, Bruce Goldsmith, Ph.D. and Leslie Rudy, Ph.D., both of whom found Plaintiff to have only moderate limitations in her ability to interact with others. (Doc. #9-2, *PageID* #s 43-44; Doc. #9-3, *PageID* #s 106-13, 120-26, 139-45, 156-62).

Finally, the ALJ adequately addressed Plaintiff's subjective symptoms. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without

authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

While Plaintiff alleges that she has more severe restrictions in areas such as social functioning and her ability to regulate her emotions, the ALJ concluded that Plaintiff had no more than moderate limitations in these areas and that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the record as a whole. (Doc. #9-2, *PageID* #s 44-45, 49-51). In addition to the medical evidence reviewed above, the ALJ also considered other evidence in the record and pointed out the inconsistences with her alleged symptoms. *Id* at 44-45. In particular, he noted that, despite her statements otherwise, Plaintiff had demonstrated "the ability to interact appropriately with others." *Id*. at 44. In support, the ALJ detailed:

> For example, [Plaintiff] resided with and described growing closer to her cousin. She socialized with other patients once her symptoms improved. [Plaintiff] attended college and was able to adapt and learn to conform with socially acceptable standards there. She spends time with others by phone given that she described having a support system with her boyfriend. On multiple treatment occasions, [Plaintiff] has presented with normal mood and affect and cooperative behavior even when being treated for pain.

*Id*. (record citations omitted).

Likewise, the ALJ also found that "when fully complying with a therapeutic level of treatment, [Plaintiff] has exhibited many indicators of an ability to regulate her emotions and control her behavior." *Id*. at 45. Here, the ALJ pointed to reports of Plaintiff's calmer behavior and

reductions in her demonstrations of disorganized speech, grandiosity, and risky sexual behavior when complying with her prescribed treatment. *Id*. He also pointed out that Plaintiff "was able to remain stable and exhibit appropriate speech and behavior in a stressful situation and was future-oriented." *Id*.

Hence, the ALJ carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings. In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that her medical conditions did not support the degree of limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For all the foregoing reasons, the Court finds that the ALJ properly considered and explained the reasons for finding Ms. Thomas's opinion and the degree of limitations advocated by Plaintiff to be unpersuasive. Moreover, the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's assignment of error is without merit.

## IT IS THEREFORE ORDERED THAT:

1.      Plaintiff's Statement of Errors (Doc. #10) is **DENIED**;

2.      The Commissioner's non-disability determination is **AFFIRMED**; and

3.      The case is terminated on the docket of this Court.


March 11, 2022                                        *s/Peter B. Silvain, Jr.*
                                                     Peter B. Silvain, Jr.
                                                     United States Magistrate Judge

11